UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CRIMINAL NO. 24-CR-143-1 (TSC)** |
| v. | |
| **JEVAUGHN MARK,** | |
| **Defendant.** | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this Memorandum in Aid of Sentencing.

The Defendant, with his brother and co-conspirator, and others, sold various dangerous illegal drugs, including cocaine, MDMA, and "ketamine," while possessing guns, throughout the Washington, D.C., area for several years. Recklessly disregarding what he actually sold, the defendant's "ketamine," which contained fentanyl, ultimately killed two individuals. For his conduct and pursuant to the Presentence Investigations Report Guidelines calculations of 292 to 365[1] months and the plea agreement to cap allocution to 210 months, the government requests the Court to sentence the Defendant to 210 months of imprisonment followed by five years of supervised release. In support thereof, the government respectfully submits the following:

I. **FACTUAL AND PROCEDURAL BACKGROUND**

   A. **Procedural History**

---

[1] In the Probation Office's Sentencing Recommendation (ECF 52), the Guidelines range is listed as 262 to 327 months. However, the range should be 292 to 365 months if the adjusted offense level is 37 at Criminal History Category IV.

On March 21, 2024, Defendant was indicted in an eight-count indictment for distribution of 40 grams or more of fentanyl and cocaine to undercover officers between January 10, 2024, and March 13, 2024. On April 9, 2024, a superseding indictment was filed charging the defendant and his brother, Angelo Mark, in a conspiracy to distribute 40 grams of fentanyl and 500 grams of cocaine between January 2021 and March 2024. The first superseding indictment also included additional charges of possession with intent to distribute fentanyl and cocaine for both brothers, and firearms offenses. On June 13, 2024, a second superseding indictment was filed charging the defendant with conspiracy to distribute 40 grams of fentanyl and 500 grams of cocaine resulting in the death of two individuals, B.R. and R.B., on December 26, 2023, in addition to the charges in the first superseding indictment.

On March 14, 2025, the defendant pleaded guilty to Counts One and Thirteen of the second superseding indictment for conspiracy to distribute and unlawful possession of a firearm by a prohibited person. Under the terms of the plea agreement, the government agreed to dismiss any remaining charges in the second superseding indictment pertaining to the defendant at the sentencing hearing.

**B. The Defendant's Conduct**

Since at least January 2021, until the time of their arrest in March 2024, the Defendant and his co-defendant sold dangerous drugs all over the metropolitan Washington, D.C. area. The defendant developed a "menu" of drugs he offered and advertised his products by texting his customers this menu. On the menu, the defendant listed cocaine, both "raw pure" cocaine and regular cocaine, MDMA, and ketamine, which was added to his menu around November 2023. "Pure raw" cocaine denotes uncut cocaine, meaning it was pure and not mixed with a cutting agent such as inositol. From the phone evidence recovered in this case, it appears that the defendant sold

2

drugs to dozens of customers on a daily basis for at least three years, often with the help of his brother who frequently delivered the drugs. The defendant routinely delivered the drugs himself too.

On December 26, 2023, the defendant sold one "ball" of "raw" cocaine, which is approximately 3.5 grams, and three grams of "ketamine" to the decedent B.R. Text messages recovered show that this was not the first time the defendant distributed drugs to B.R., but it was the first time the defendant sold "ketamine" to B.R. Ketamine was added to the defendant's menu of drugs around November 2023. The "ketamine" the defendant sold contained no actual ketamine; instead, it consisted of fentanyl, xylazine, and caffeine. The leftover "ketamine" which was found at the scene following B.R's death on December 27, 2023, was tested at the DEA laboratory and confirmed to be fentanyl, xylazine, and caffeine.

B.R. was not the only victim who died as a result of the defendant's distribution of fentanyl. B.R.'s friend, R.B. also consumed the "ketamine" and was found alongside B.R. the next day. Both victims' toxicology reported high levels of fentanyl. Following the deaths of B.R. and R.B., investigators worked quickly to identify the drug dealer responsible for selling them the fentanyl. They located the text message that led them directly to the defendant and promptly began making undercover buys from the defendant. Between January 10, 2024, and March 13, 2024, investigators made six controlled purchases of approximately 127 grams of fentanyl, 18 grams of cocaine, and 6 grams of MDMA. Each time the undercover officer asked to purchase ketamine, the defendant provided fentanyl.

What is most aggravating about the defendant's sale of fentanyl is that even if he did not specifically know that the "ketamine" he acquired to sell was not actually ketamine, he recklessly and willfully disregarded the likelihood that his product contained fentanyl when over the course

3

of three years, various customers notified him that the drugs they bought contained fentanyl. The below examples—a few of many—illustrate how the defendant (in blue text box) was on notice that his product contained fentanyl, and yet he continued to distribute drugs for money.





These messages both pre-date and post-date the distribution of fentanyl to the victims in December 2023.

## II.    CALCULATION OF SENTENCING GUIDELINES

Though the government and Defendant agreed to the estimated offense level of 35 after adjustment for acceptance of responsibility as outlined in the Plea Agreement, the Government does not dispute the Presentence Investigation Report's Estimated Offense Level of 37 after the firearm enhancement.[2]  The Probation Office calculated the defendant's Criminal History Score as IV, instead of the parties' estimated score of III.  The government does not dispute the Probation Office's calculations.

## III.   RECOMMENDATION

---

[2] The government made a plea offer to the defendant without the firearm enhancement and after the offer was informally accepted, became aware that the firearm enhancement was not applied.  However, the government still agreed to honor its original plea offer and cap allocution to 210 months.

All the applicable factors set forth in Title 18, United States Code, Section 3553(a), should be considered by this Court. *See United States v. Gall*, 552 U.S. 38, 49-50 (2007). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (*id*. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (*id*. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (*id*. § 3553(a)(6)). The government's sentencing recommendation is based upon a review and balancing of these factors.

A. **Nature and Circumstances of the Offense**

Drug trafficking is undoubtedly serious and causes great harm to our community, and in this case, the defendant's action had a direct and real impact on individuals in our community in the most devastating way. Defendant and his brother ran a prolific drug delivery service throughout Washington, D.C. and the surrounding areas for at least three years with dozens of daily deliveries, injecting dangerous drugs into the community. Even when confronted with numerous complaints by customers finding fentanyl in their drugs, the defendant chose to ignore those warnings and continued to sell drugs, prioritizing profit over the safety and welfare of others. Had the defendant bothered with the simple act of testing the illicit drugs he was selling with a home test kit, perhaps the victims would still be here today. The defendant's willful disregard to heed warnings from other customers show his callousness and indifference to those he distributed drugs to for a profit.

B.R. was a law partner at a global law firm and longtime D.C. resident. His friends and family describe him as kind with an infectious generosity. R.B. had recently moved to the west coast to pursue a new career and was back in D.C. visiting family and friends for the holidays. Both victims were loved by their friends and family and their unexpected and sudden deaths have had and will continue to have long-term and profound consequences for their loved ones.

The Controlled Substances Act, under 21 U.S.C. § 841, contemplates distribution of narcotics resulting in seriously bodily injury or death as the most offensive violation of the federal drug laws and accordingly, imposes a mandatory sentence of 20 years to life. Here, the defendant did exactly that – distributed a controlled substance that resulted in death. His conduct not only directly caused one death, but two deaths.

Furthermore, as often the case of drug dealers arming themselves with firearms, the defendant had in his possession two firearms and his brother/co-conspirator had seven firearms. The drug trade is particularly dangerous when traffickers, like the defendant and his brother, possess these firearms in furtherance of their drug dealing.

### B. History and Characteristics of the Defendant

The defendant is a long-time drug dealer and habitual offender. His past arrests and criminal history demonstrate that he is no stranger to the criminal justice system. His convictions include burglary, firearms offenses, theft and destruction of property, and prior drug offenses. Past sentences, including incarceration, have had minimal rehabilitative effect on the defendant and proven to be ineffective in deterring the defendant from engaging in further criminal activity. Despite pleading guilty to a marijuana offense in 2018, he was selling drugs again no later than January 2021.

During the execution of the search warrant on the defendant's residence in March of 2024,

officers recovered one unloaded handgun, one loaded handgun that was reported stolen out of Virginia, 479 grams of cocaine, 13.5 grams of heroin and fentanyl, 9.4 grams of heroin, fentanyl and caffeine, 17.05 grams of N,N-Dimethylpentylone, an additional 37.36 grams of cocaine, cutting agents, and approximately $38,914 in cash. The recovery shows the defendant kept a steady supply of narcotics for his business and the firearms to protect his product and proceeds. Across the street where the defendant's brother and coconspirator lived, officers recovered seven more firearms including three rifles and drug packaging paraphernalia used in their operation along with approximately $50,000 more in cash.

### C. Need for Deterrence

Distribution of drugs resulting in death underscores the public interest in criminalizing the distribution of illegal drugs. The public interest also demands that wrongdoers are punished for their offenses and courts impose sentences that deter others from engaging in similar acts. No sentence—not even a life sentence—here can bring back B.R. or R.B. but the sentence must reflect the seriousness of the defendant's actions and include a period of incarceration lengthy enough to both protect society from the defendant from selling fentanyl again and to ensure the defendant receives the rehabilitation he needs.

### IV. CONCLUSION

Given the Probation Office's recommendation of a sentence of 262 months, a statutory mandatory minimum of 20 years had the defendant been convicted of this offense as charged, the government's request for 210 months of imprisonment followed by 5 years of supervised release is reasonable, serves the interests of justice and is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a). For the firearm offense (Count 13), the government recommends a sentence of 120 months to run concurrently to the sentence in Count

1. Finally, the Government will move to dismiss the remaining counts of the second superseding indictment at sentencing pursuant to the plea agreement.

                      Respectfully Submitted,

                      Jeanine Ferris Pirro
                      United States Attorney

By:         /s/
                      Iris McCranie
                      Assistant U.S. Attorney
                      N.Y. Bar No. 5011234
                      United States Attorney's Office
                      601 D Street, NW
                      Washington, D.C. 20530
                      (202) 252-7828
                      iris.mccranie@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2025, a copy of the foregoing Memorandum was served on counsel for Defendant via the Court's electronic case filing system.

                                                   /s/
                                               Iris McCranie
                                               Assistant U.S. Attorney